## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTER DISTRICT OF NEW YORK

------------------------------------------------------- x
:
:
:
LUBERTHA BUTLER,                                         :     Civil Action No. **06    6865**
:
Plaintiff,                                    :
:     **COMPLAINT AND**
:     **DEMAND FOR JURY TRIAL**
:
v.                                       :
:
ELI LILLY AND COMPANY,                                   :     WEINSTEIN, J.
:
Defendant.                                    :     MANN M.J.                    FILED
:                                IN CLERK'S OFFICE
:                              U.S. DISTRICT COURT E.D.N.Y.
:
:                                   ★ DEC 29 2006 ★
:
:                                      BROOKLYN OFFICE
------------------------------------------------------- x


Plaintiff, Lubertha Butler, by and through her attorneys, upon information and

belief, at all times hereinafter mentioned, alleges as follows:

### JURISDICTION AND VENUE

1.      This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because

complete diversity exists because Plaintiff is a citizen of Louisiana which is different

from the State where the defendant is incorporated and has its principal places of

business, and the amount in controversy, exclusive of interest and costs, exceeds seventy-

five thousand dollars ($75,000.00).

2.      Venue is proper within this District pursuant to 28 U.S.C. § 1391

because a substantial part of the events or omissions giving rise to Plaintiff's claims

occurred in this district and the defendant, at all times relevant times, conducted substantial business in this District.

## PARTIES

3.      Plaintiff is of the age of majority, and was and is at all times relevant herein a resident of Louisiana, and used Zyprexa from 1996 until 2006.

4.      Eli Lilly and Company (hereinafter referred to as "Defendant") is a corporation incorporated under the laws of the State of Indiana with its principal place of business in Indiana.

5.      Defendant is, and was at all relevant times, duly authorized to conduct business in the State of New York

6.      Defendant has transacted business in the State of New York.

7.      Defendant regularly conducts and solicits business within the State of New York.

8.      At all relevant times, Defendant, through its agents, servants, and employees, was the designer, manufacturer, marketer, advertiser, distributor, and seller of Zyprexa and Zyprexa Zydis, also known as olanzapine (hereinafter individually and collectively referred to as "Zyprexa").

9.      Defendant, either directly or through its agents, servants, and employees, does business in the State of New York, and at all relevant times, has sold and distributed Zyprexa in the State of New York for use in the treatment of schizophrenia, bipolar disorder, and other "off-label" uses.

10.      Defendant derives substantial revenue from goods used or consumed in the State of New York.

2

11.     Defendant expected, or should have expected, that its actions could or would have consequences within the State of New York.

## NATURE OF THE CASE

12.     Defendant, either directly or through its agents, servants, and employees, designed, manufactured, marketed, advertised, distributed, and sold Zyprexa for the treatment of schizophrenia, bipolar disorder, and other "off-label" uses.

13.     As a result of the defective nature of Zyprexa, those persons who were prescribed and ingested or injected Zyprexa, including Plaintiff, have suffered and may continue to suffer severe and permanent personal injuries, including an increased risk of developing diabetes, pancreatitis, hyperglycemia, diabetic ketoacidosis, and diabetic coma, as well as other severe and permanent injuries.

14.     Defendant concealed its knowledge of Zyprexa's unreasonably dangerous risks from Plaintiff, other consumers, and the medical and psychiatric communities.

15.     Defendant failed to conduct adequate post-marketing surveillance of Zyprexa after it began marketing, advertising, distributing, and selling the product.

16.     Consequently, Plaintiff seeks compensatory damages as a result of his injuries resulting from his ingestion of Zyprexa, which has caused and will continue to cause Plaintiff to suffer pain, mental anguish, and other injuries, and to incur significant expenses.

## FACTUAL BACKGROUND

17.     At all relevant times, Defendant has been responsible for, or involved in, designing, manufacturing, marketing, advertising, distributing, and selling Zyprexa.

### Zyprexa's FDA History

18.     In 1996, the United States Food & Drug Administration ("FDA") approved Zyprexa for use for the treatment of schizophrenia.

19.     In 2000, the FDA approved Zyprexa for use for the short-term treatment of acute mixed or manic episodes associated with bipolar disorder.

20.     In 2004, the FDA approved Zyprexa for maintenance in the treatment of bipolar disorder, also known as manic-depressive illness.

### Defendant Has Realized Significant Profits from Sales of Zyprexa

21.     Zyprexa is one of Defendant's top-selling drugs.

22.     Since Defendant introduced Zyprexa in 1996, it has been prescribed to more than 12 million people worldwide.

23.     In 2003, approximately seven million prescriptions for Zyprexa were dispensed resulting in more than $2 billion in sales.  In 2003, Zyprexa was the seventh largest selling drug in the country by retail sales.

24.     Zyprexa is an atypical antipsychotic medication.  Zyprexa, like other antipsychotic medications, may improve symptoms associated with schizophrenia and bipolar disorder such as agitation, delusions, hallucinations, and suspiciousness.

25.     Consumers, including Plaintiff, who have used, and in some instances continue to use Zyprexa, have available several alternative atypical

4

antipsychotic medications including Abilify, Risperdal, Clozaril, Seroquel, and Geodon, as well as other antipsychotic medications, including Haldol, Thorazine, Prolixin, Navane, Stelazine, Trilafon, and Mellaril.

26.     In December 2000, the *British Medical Journal* found no clear evidence that Zyprexa or other atypical antipsychotics were more effective or better tolerated than conventional antipsychotics including Haldol and Thorazine.

27.     In November 2003, the *Journal of the American Medical Association* compared Zyprexa with Haldol and found "no statistically or significant advantages" of Zyprexa for treatment of schizophrenia.   The authors did note a significant difference among the costs of Haldol and Zyprexa per tablet: $0.02 versus $4.84 respectively.

**Zyprexa's Association With Diabetes and Other Serious Injuries**

28.     Shortly after Defendant began selling Zyprexa, reports of consumers who were using Zyprexa suffering from hyperglycemia, acute weight gain, exacerbation of diabetes mellitus, pancreatitis, and other severe diseases and conditions associated began to surface.  Defendant knew, or was reckless in not knowing, of these reports.  Furthermore, Defendant has been aware of studies and journal articles linking use of Zyprexa with these and other severe and permanent diseases since 1998.

29.     Diabetes is associated with long-term complications that affect nearly every part of the body.  Diabetes often leads to blindness, heart and blood vessel disease, strokes, kidney failure, amputations, and nerve damage.

30.     Between April 1996 and May 2001, the FDA received several reports of hyperglycemia, worsening of existing diabetes, pancreatitis, and other severe injuries among children who were prescribed Zyprexa.

31.     Beginning in 1998, scientific journals began to publish studies that established a causal association between using Zyprexa and developing or exacerbating diabetes mellitus (hereinafter "diabetes") and development of dangerously high blood sugar levels, *i.e.*, hyperglycemia.

32.     In November 2001, the *Journal of the American Medical Association* reported a link between the use of Zyprexa by adolescents and development of hyperglycemia.

33.     Recently, studies conducted in Europe and Japan revealed that numerous patients treated with Zyprexa experienced a significantly higher incidence of severe and permanent diseases and conditions, including dangerous rises in blood glucose levels.

34.     In July 2002, a study conducted at Duke University further established a relationship between Zyprexa and diabetes. This study documented nearly 300 cases of diabetes among people using Zyprexa.

35.     In April 2002, the British Medicines Control Agency warned about the risk of diabetes for patients prescribed Zyprexa in its newsletter *Current Problems in Pharmacovigilance*. This newsletter reported forty (40) reports of diabetes, hyperglycemia, diabetic ketoacidosis, diabetic coma, and one death among users of Zyprexa. Subsequently, the British government required Defendant to warn consumers

about the risk of diabetes and diabetic ketoacidosis, and to further required Defendant to instruct patients who were using Zyprexa to monitor their blood sugar levels.

36.     In April 2002, the Japanese Health & Welfare Ministry issued emergency safety information regarding the risk of diabetes, diabetic ketoacidosis, and diabetic coma for patients prescribed Zyprexa.

## Defendant's Failure to Warn Consumers of the Dangers of Zyprexa

37.     Defendant has not warned consumers in this country, including Plaintiff, about the risk of diabetes, hyperglycemia, diabetic ketoacidosis, or other serious injuries caused by Zyprexa.

38.     Defendant misrepresented and failed to appropriately warn consumers, including Plaintiff, and the medical and psychiatric communities of the dangerous risk of developing diabetes, pancreatitis, hyperglycemia, diabetic ketoacidosis, and diabetic coma, as well as other severe and permanent health consequences caused by Zyprexa, and consequently placed its profits above the safety of its customers.

39.     By reason of the foregoing, Plaintiff has developed diabetes, and is at an increased risk of developing hyperglycemia, diabetic ketoacidosis, and diabetic coma, as well as other severe and permanent injuries.

40.     Plaintiff has endured and continues to suffer from mental anguish from the knowledge that he may further develop pancreatitis, diabetic ketoacidosis, and diabetic coma, as well as other severe and permanent injuries as a result of Defendant's wrongful acts and omissions.

41.     By reason of the foregoing, Plaintiff has been severely and permanently injured and will require constant and continuous medical care and treatment.

7

## PLAINTIFF'S USE OF ZYPREXA

42.     Plaintiff was prescribed and began taking Zyprexa in 1996 and used Zyprexa until 2006.

43.     Plaintiff used Zyprexa as prescribed and in a foreseeable manner.

44.     As a direct and proximate result of using Zyprexa, Plaintiff has developed diabetes  – a permanent, life threatening condition.

45.     Plaintiff, as a direct and proximate result of ingesting Zyprexa, has suffered severe pain and suffering, and has sustained permanent injuries and emotional distress.

46.     Plaintiff used Zyprexa that had reached him without substantial change in its condition since it was manufactured or sold.

47.     Plaintiff would not have used Zyprexa if Defendant had properly disclosed the risks associated with the product.

## FRAUDULENT CONCEALMENT

48.     The running of any statute of limitations has been tolled by reason of Defendant's fraudulent concealment.    Defendant, through its affirmative misrepresentations and omissions, actively concealed from Plaintiff and her prescribing physician the true risks associated with taking Zyprexa.

49.     As a result of Defendant's actions, Plaintiff and her prescribing physician were unaware, and could not reasonably know or have learned through reasonable diligence that he had been exposed to the risks alleged herein and that those risks were the direct and proximate result of Defendant's acts and omissions.

## COUNT I
### (Negligence)

50.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

51.     Defendant had a duty to exercise reasonable care when designing, manufacturing, marketing, advertising, distributing, and selling Zyprexa.

52.     Defendant failed to exercise due care under the circumstances, and therefore breached its duty when it failed to warn consumers, including Plaintiff, of the dangerous risks of Zyprexa, including but not limited to diabetes, pancreatitis, hyperglycemia, diabetic ketoacidosis, and diabetic coma.

53.     Defendant's negligent acts and omissions, either directly or through its agents, servants, and employees, include, but are not limited to the following:

   a) designing, manufacturing, marketing, advertising, distributing, and selling Zyprexa to consumers, including Plaintiff, without an adequate warning of the dangerous risks of Zyprexa and without proper instructions to avoid harm caused by Zyprexa;

   b) failing to exercise due care when advertising and promoting Zyprexa; and

   c) failing to exercise ordinary care by conducting appropriate post-market testing and surveillance of Zyprexa.

54.     Although Defendant knew, or should have known, of Zyprexa's adverse effects Defendant has continued to negligently market, advertise, distribute, and sell Zyprexa to consumers, including Plaintiff.

55.     Defendant knew, or should have known, that consumers, including Plaintiff would suffer injuries as a result of Defendant's failure to exercise ordinary care.

56.     As a direct and proximate result of Defendant's negligence, the Plaintiff now suffers from diabetes, a disease that is widely recognized as one of the leading causes of death and disability in the United States.  In addition to developing diabetes, Plaintiff suffers from mental anguish, including, but not limited to, diminished enjoyment of life, and fear of further developing pancreatitis, diabetic ketoacidosis, and diabetic coma, which are other severe and permanent injuries associated with ingestion or injection of Zyprexa.

57.     As a result of the foregoing acts and omissions, Plaintiff requires and will require health care and services, and has incurred and will continue to incur medical, psychiatric, and related expenses.  Plaintiff has suffered and will continue to suffer indirect costs, including diminished quality of life and a significant risk of premature death; and direct medical costs for diabetes care, including hospitalizations, medical care, and treatment supplies.

58.     By reason of the foregoing, Plaintiff has been damaged by Defendant in the sum of ten million dollars ($10,000,000.00) in compensatory damages.

## COUNT II
### (Strict Liability – Design Defect)

59.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

60.     Defendant manufactures, sells, distributes, markets, and/or supplies of Zyprexa, which is defective and unreasonably dangerous to consumers.

61.     Defendant designed, manufactured, sold, distributed, supplied, marketed, and/or promoted Zyprexa, which was expected to reach and did reach

consumers, including Plaintiff, without substantial change in the condition in which it was manufactured and sold by Defendant.

62.     Plaintiff used Zyprexa as prescribed and in a manner normally intended, recommended, promoted, and marketed by Defendant.

63.     Zyprexa failed to perform safely when used by ordinary consumers, including Plaintiff, even when used in its intended or a reasonably foreseeable manner.

64.     Zyprexa was defective in its design and was unreasonably dangerous in that its foreseeable risks exceeded the benefits associated with its design or formulation.

65.     Alternatively, Zyprexa was defective in design or formulation in that its use posed a greater likelihood of injury than other available antipsychotic medications and was more dangerous than an ordinary consumer could reasonably foresee.

66.     Although Defendant knew, or should have known, of the defective nature of Zyprexa, it continued to design, manufacture, market, and sell Zyprexa so as to maximize sales and profits at the expense of the public health and safety, in knowing, conscious and deliberate disregard of the foreseeable harm caused by Zyprexa.

67.     Plaintiff could not, through the exercise of reasonable care, have discovered Zyprexa's defects or perceived the danger of Zyprexa.

68.     As a direct and proximate result of the design defects of Zyprexa, Plaintiff has developed diabetes and has suffered severe and permanent injuries, pain, and

mental anguish, including diminished enjoyment of life, and fear of developing other harmful conditions including, but not limited to, diabetic ketoacidosis and diabetic coma.

69.     In addition, Defendant's aforementioned conduct was committed with knowing, conscious, wanton, willful, and deliberate disregard for the value of human life, and the rights and safety of consumers such as Plaintiff, thereby entitling Plaintiff to punitive damages so as to punish Defendant and deter it from similar conduct in the future.

70.     By reason of the foregoing, Plaintiff has been damaged as against Defendant in the sum of ten million dollars ($10,000,000.00) in compensatory damages and twenty million dollars ($20,000,000.00) in punitive damages due to Defendant's willful, wanton, and reckless conduct.

## COUNT III
### (Strict Liability -- Failure to Warn)

71.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

72.     Zyprexa was under the exclusive control of Defendant and was unaccompanied by appropriate warnings regarding the risk of diabetes, hyperglycemia, pancreatitis, diabetic ketoacidosis, diabetic coma, and other severe and permanent injuries associated with its use.  The warnings given did not accurately reflect the risk, incidence, symptoms, scope or severity of such injuries to the consumer.  The promotional activities of Defendant further diluted or minimized the warnings given with the product.

73.     Defendant downplayed the serious and dangerous side effects of Zyprexa to encourage sales of the product; consequently, Defendant placed its profits above its customers' safety.

74.     Zyprexa was defective and unreasonably dangerous when it left the possession of the Defendant in that it contained warnings insufficient to alert Plaintiff to the dangerous risks and reactions associated with it, including, but not limited to diabetes. Even though Defendant knew or should have known of the risks and reactions associated with Zyprexa, it still failed to provide warnings that accurately reflected the signs, symptoms, incident, scope, or severity of the risks associated the product.

75.     Plaintiff used Zyprexa as intended or in a reasonably foreseeable manner.

76.     Plaintiff could not have discovered any defect in Zyprexa through the exercise of reasonable care.

77.     Defendant, as manufacturers of pharmaceutical drugs, is held to the level of knowledge of an expert in the field and, further, Defendant had knowledge of the dangerous risks and side effects of Zyprexa.

78.     Plaintiff did not have the same knowledge as Defendant and no adequate warning was communicated to him.

79.     Defendant had a continuing duty to warn consumers of Zyprexa, including Plaintiff, of the dangers associated with Zyprexa, and by negligently and/or wantonly failing to adequately warn of the dangers of the use of Zyprexa Defendant breached its duty.

80.   Although Defendant knew, or was reckless in not knowing, of the defective nature of Zyprexa, it continued to design, manufacture, market, and sell Zyprexa without providing adequate warnings and instructions concerning the use of Zyprexa so as to maximize sales and profits at the expense of the public health and safety, in knowing, conscious, and deliberate disregard of the foreseeable harm caused by Zyprexa.

81.   As a direct and proximate result of Defendant's failure to adequately warn or other acts and omissions of Defendant described herein, Plaintiff developed pancreatitis and diabetes and was caused to suffer severe and permanent injuries, pain, and mental anguish, including diminished enjoyment of life, and fear of developing other harmful conditions including, but not limited to, diabetic ketoacidosis and diabetic coma.

82.   In addition, Defendant's conduct in the packaging, warning, marketing, advertising, promotion, distribution, and sale of Zyprexa was committed with knowing, conscious, willful, wanton, and deliberate disregard for the value of human life, and the rights and safety of consumers such as Plaintiff, thereby entitling Plaintiff to punitive damages so as to punish Defendant and deter it from similar conduct in the future.

83.   By reason of the foregoing, Plaintiff has been damaged as against Defendant in the sum of ten million dollars ($10,000,000.00) in compensatory damages and twenty million dollars ($20,000,000.00) in punitive damages due to Defendant's willful, wanton, and reckless conduct.

## COUNT IV
### (Breach of Express Warranty)

84. Plaintiff repeats, reiterates, and realleges each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

85. Defendant expressly represented to Plaintiff, other consumers, and the medical community that Zyprexa was safe and fit for use for its intended purposes; that it was of merchantable quality; that it did not produce any dangerous side effects; and that it was adequately tested.

86. Zyprexa does not conform to Defendant's express representations because it is not safe, has numerous serious side effects, and causes severe and permanent injuries.

87. Zyprexa does not, and at all relevant times, has not performed as safely as an ordinary consumer would expect when used as intended or in a reasonably foreseeable manner.

88. Plaintiff, other consumers, and the medical community relied upon the express warranties of the Defendant.

89. As a direct and proximate result of the breach of said warranties, Plaintiff developed diabetes and was caused to suffer severe and permanent injuries, pain, and mental anguish, including diminished enjoyment of life, and fear of developing other harmful conditions including, but not limited to, diabetic ketoacidosis and diabetic coma.

90. In addition, Defendant's conduct in the marketing, advertising, promotion, distribution, and sale of Zyprexa was committed with knowing, conscious, willful, wanton, and deliberate disregard for the value of human life, and the rights and

safety of consumers such as Plaintiff, thereby entitling Plaintiff to punitive damages so as to punish Defendant and deter it from similar conduct in the future.

91.     By reason of the foregoing, Plaintiff has been damaged as against Defendant in the sum of ten million dollars ($10,000,000.00) in compensatory damages and twenty million dollars ($20,000,000.00) in punitive damages due to Defendant's willful, wanton, and reckless conduct.

## COUNT V
### (Breach of Implied Warranty)

92.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

93.     Defendant manufactured, distributed, advertised, promoted and sold Zyprexa.

94.     At all relevant times, Defendant knew of the use for which Zyprexa was intended and impliedly warranted the product to be of merchantable quality, and safe and fit for such use.

95.     Defendant was aware that consumers, including Plaintiff, would use Zyprexa for treatment of their schizophrenia, bipolar disorder, or other "off-label" uses, and knew, or recklessly disregarded, that consumers, including Plaintiff, and the medical and psychiatric communities relied upon its judgment and sensibility to only sell Zyprexa if it was of merchantable quality and safe and fit for its intended use.

96.     Defendant herein breached its implied warranty to consumers, including Plaintiff; Zyprexa was not of merchantable quality or safe and fit for its intended use.

97.     Consumers, including Plaintiff, and the medical and psychiatric communities reasonably relied upon Defendant's implied warranty for Zyprexa.

98.     Zyprexa reached consumers without substantial change in the condition in which it was manufactured and sold by Defendant.

99.     As a direct and proximate result of the breach of said implied warranties, Plaintiff developed pancreatitis and diabetes and was caused to suffer severe and permanent injuries, pain, and mental anguish, including diminished enjoyment of life, and fear of developing other harmful conditions including, but not limited to, diabetic ketoacidosis and diabetic coma.

100.     In addition, Defendant's conduct in the marketing, advertising, promotion, distribution, and sale of Zyprexa was committed with knowing, conscious, willful, wanton, and deliberate disregard for the value of human life, and the rights and safety of consumers such as Plaintiff, thereby entitling Plaintiff to punitive damages so as to punish Defendant and deter it from similar conduct in the future.

101.     By reason of the foregoing, Plaintiff has been damaged as against Defendant in the sum of ten million dollars ($10,000,000.00) in compensatory damages and twenty million dollars ($20,000,000.00) in punitive damages due to Defendant's willful, wanton, and reckless conduct.

## COUNT VI
### (Fraudulent Misrepresentation)

102.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

103.     Defendant falsely and fraudulently represented to the medical and psychiatric community, and to the Plaintiff and the public in general, that Zyprexa had

been tested and found to be safe and effective for the treatment of schizophrenia and bipolar disorder.

104.    Defendant knew, or should have known, that its representations were false yet it willfully, wantonly and recklessly disregarded its obligation to provide truthful representations regarding the safety and risks of Zyprexa to consumers, including Plaintiff, and the medical and psychiatric communities.

105.    Defendant's representations were made with the intent of defrauding and deceiving Plaintiff, other consumers, generally, and the medical and psychiatric communities, particularly, with the intent of encouraging and inducing sales of Zyprexa.

106.    Defendant knowingly, consciously, and deliberately placed its financial gain above the rights and safety Plaintiff and other consumers.

107.    Defendant's fraudulent representations evinced its callous, reckless, willful, and depraved indifference to the health, safety, and welfare of consumers, including Plaintiff.

108.    Plaintiff was unaware of the falsity of Defendant's representations and reasonably reasonably relied upon Defendant's representations, thereby developing diabetes and enhanced risk of developing additional severe and permanent injuries in the future.

109.    As a direct and proximate result of Defendant's fraudulent misrepresentations, Plaintiff developed pancreatitis and diabetes and was caused to suffer severe and permanent injuries, pain, and mental anguish, including diminished enjoyment

of life, and fear of developing other harmful conditions including, but not limited to, diabetic ketoacidosis and diabetic coma.

110.    In addition, Defendant's conduct in the marketing, advertising, promotion, distribution, and sale of Zyprexa was committed with knowing, conscious, willful, wanton, and deliberate disregard for the value of human life, and the rights and safety of consumers such as Plaintiff, thereby entitling Plaintiff to punitive damages so as to punish Defendant and deter it from similar conduct in the future.

111.    By reason of the foregoing, Plaintiff has been damaged as against Defendant in the sum of ten million dollars ($10,000,000.00) in compensatory damages and twenty million dollars ($20,000,000.00) in punitive damages due to Defendant's willful, wanton, and reckless conduct.

## COUNT VII
### (Fraudulent Concealment)

112.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

113.    At all relevant times, Defendant concealed or omitted material information regarding the safety of Zyprexa from consumers, including Plaintiff, and the medical and psychiatric communities.

114.    Defendant knew, or was reckless in not knowing, that Zyprexa posed significant risks of causing severe and permanent injuries, and elected not to advise the medical and psychiatric communities, Plaintiff, or other consumers of Zyprexa's risks, and consequently placed its profits above the safety of Plaintiff and other consumers.

115.    In its representations, Defendant fraudulently concealed and intentionally omitted material information about Zyprexa's dangers from consumers, including Plaintiff.

116.    Defendant knew, or was reckless in not knowing, that Zyprexa causes dangerous elevation of blood sugar levels, acute pancreas injuries, and other severe and permanent injuries.

117.    Defendant had sole access to material facts concerning the dangers and unreasonable risks of Zyprexa.

118.    Defendant willfully concealed material information regarding the dangers of Zyprexa to induce consumers, including Plaintiff, to use Zyprexa. Defendant's concealment of the defective nature of Zyprexa and its dangerous risks Plaintiff to suffer damages.

119.    Defendant was under a duty to disclose to Plaintiff, other consumers, and the medical and psychiatric communities the defective nature of Zyprexa, and the risks and dangers associated with its use.

120.    As a direct and proximate result of Defendant's fraudulent concealment, Plaintiff developed pancreatitis and diabetes and was caused to suffer severe and permanent injuries, pain, and mental anguish, including diminished enjoyment of life, and fear of developing other harmful conditions including, but not limited to, diabetic ketoacidosis and diabetic coma.

121.    In addition, Defendant's conduct in the marketing, advertising, promotion, distribution, and sale of Zyprexa was committed with knowing, conscious, willful, wanton, and deliberate disregard for the value of human life, and the rights and

safety of consumers such as Plaintiff, thereby entitling Plaintiff to punitive damages so as to punish Defendant and deter it from similar conduct in the future.

122.   By reason of the foregoing, Plaintiff has been damaged as against Defendant in the sum of ten million dollars ($10,000,000.00) in compensatory damages and twenty million dollars ($20,000,000.00) in punitive damages due to Defendant's willful, wanton, and reckless conduct.

## COUNT VIII
## (Negligent Misrepresentation)

123.   Plaintiff repeats, reiterates, and realleges each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

124.   Defendant, in addition to knowing misrepresentations, made misrepresentations without any reasonable grounds for believing its statements to be true to Plaintiff, other patients, and the medical and psychiatric communities.

125.   Defendant, through its misrepresentations, intended to induce justifiable reliance by Plaintiff, other patients, and the medical and psychiatric communities.

126.   Defendant, through its marketing campaign and communications with treating physicians or psychiatrists, was in a relationship so close to that of Plaintiff and other patients that it approaches and resembles privity.

127.   Defendant owes a duty to the medical and psychiatric communities, Plaintiff, and other consumers, to conduct appropriate and adequate studies and tests for all its products, including Zyprexa, and to provide appropriate and adequate information and warnings.

128.    Defendant failed to conduct appropriate or adequate studies for Zyprexa.

129.    Defendant failed to exercise reasonable care by failing to conduct studies and tests of Zyprexa.

130.    As a direct and proximate result of Defendant's negligent misrepresentations, Plaintiff developed pancreatitis and diabetes and was caused to suffer severe and permanent injuries, pain, and mental anguish, including diminished enjoyment of life, and fear of developing other harmful conditions including, but not limited to, diabetic ketoacidosis and diabetic coma.

131.    By reason of the foregoing, Plaintiff has been damaged as against each defendant in the sum of ten million dollars ($10,000,000.00) in compensatory damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendant as follows:

(a) compensatory damages on each cause of action in the amount of ten million dollars ($10,000,000.00);

(b) punitive damages on counts 2, 3, 4, 5, 6, 7, and 9 in the amount of twenty million dollars ($20,000,000.00);

(c) awarding reasonable attorneys' fees, expert fees, and costs; and

(d) granting such additional and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury in this action of all issues so triable.

Dated:   December 29, 2006

KAHN GAUTHIER SWICK, LLC

Michael A. Swick  (MS-9970)
Kim E. Miller (KM-6996)
114 East 39th Street
New York, NY 10016
Telephone:   (212) 920-4310
Facsimile:   (504) 455-1498

Lewis  S. Kahn (Louisiana Bar No. 23805)
Kahn Gauthier Swick, LLC
650 Poydras St., Suite 2150
New Orleans, Louisiana 70130
Telephone (504) 455-1400
Facsimile: (504) 455-1498

**Attorneys for Plaintiffs**